# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **WILLIAM EARL DeGRATE** | **CIVIL ACTION NO. 08-1943** |
| **VS.** | **SECTION P** |
| **SHERIFF ROYCE TONEY, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff William Earl DeGrate, proceeding *in forma pauperis*, filed the instant

civil rights complaint (42 U.S.C. §1983) on December 11, 2008.  When he filed this complaint

plaintiff was a detainee at the Ouachita Parish Corrections Center (OPCC), Monroe, Louisiana,

awaiting trial on various charges in the Fourth Judicial District Court. He complained of

conditions of confinement – insufficient and poor quality food, lack of telephone access, and

inadequate law library – and he sued Ouachita Parish Sheriff Royce Toney and OPCC Warden

Brian Newcomer praying for injunctive relief – better food, the use of a telephone "calling card"

for all pretrial detainees, and law books for the prison law library. Plaintiff also implies that he

would like to join 65 of his fellow detainees/inmates as co-plaintiffs, or to obtain class-action

certification for this complaint.  This matter has been referred to the undersigned for review,

report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the

standing orders of the court. For the following reasons it is recommended that the complaint be

**DISMISSED WITH PREJUDICE** and that plaintiff's request to join co-plaintiffs and to

prosecute this complaint as a class action be **DENIED.**

***Background***

Plaintiff filed two law suits in this court in December, 2008 – the instant civil rights complaint, and, a *habeas corpus* petition challenging his pretrial detention at OPCC. [See *DeGrate v. Warden, OPCC*, No. 3:08-cv-2002.] In the latter suit plaintiff alleged that he was arrested and incarcerated at OPCC on November 14, 2008, and that he remained there until February 2009 when the charges lodged against him in the Fourth Judicial District Court were reduced or dismissed and he was transferred to the Richwood Corrections Center to face other additional charges lodged in the Monroe City Court. [See *DeGrate v. Warden, OPCC*, No. 3:08-cv-2002 at rec. doc. 1, Exhibit A; rec. doc. 5] While he was thus detained at OPCC, counsel was appointed to represent him; however, plaintiff apparently declined the appointment and he was permitted to represent himself. [*Id*., at rec. doc. 2, ¶1]

On December 9, 2008, plaintiff filed the instant complaint and, in conjunction with the complaint, he submitted three pages containing what purported to be the names and identification numbers of 65 other inmates or detainees at the OPCC who were alleged to be "... taken (sic) part of the Civil Rights Act ... against Ouachita Parish Correctional Center, food, telephone, inadequate law library..." [rec. doc. 1, pp. 5-7]

Plaintiff complained that OPCC did not employ a dietician; that an insufficient amount of calories were provided at each meal; that the meal servers used a 4 oz. ladle instead of an 8 oz. ladle; and, that the food-servers allowed the food to "set on the hall for forty-five min. before feeding..." the inmates. He also alleged that Sheriff Toney was aware of these deficiencies because he told the local Monroe newspaper that "... the food is not worth going to jail for..."

Plaintiff claimed that "... some of the plaintiffs..." lack the funds necessary to use the

telephone to call family members because the telephone system in the jail is provided by a "private phone company" and the cost is "excessive." He also complains that as a result, detainees are unable to contact their court-appointed counsel.

Finally, plaintiff complained that he and others "... have been setting over four months in jail and court appointed attorneys do nothing to move pre-trial detainees case..." He also complained that the OPCC law library does not provide inmates with the address of the court; that OPCC personnel will not identify themselves, thus inhibiting the inmates from asserting grievances; that items "... that suppose to be free..." are sold; and, that if the law library was adequate, "... inmates can define case on their own, then the court-appointed attorneys will stop doing nothing for pre-trial inmates..."

Plaintiff included the following exhibits: (1) an inmate grievance dated April 11, 2006, filed by inmate Derrick Sentel Jones complaining about lack of access to the OCCP law library [rec. doc. 1, Exhibit A, p. 8]; and, (2) a printed excerpt from a reported case downloaded from the Lexis database reported at 27 La. Ann. 480, 481 (1875) [rec. doc. 1, Exhibit B, pp. 9-10]

As noted previously, plaintiff prayed only for injunctive relief, "... better food that require by federal guideline, a calling card telephone so all pretrial detainee can use, put law books back in law library so inmates can use..." [rec. doc. 1, ¶V]

### Law and Analysis

### 1. Joinder of Plaintiffs/Class Action

Plaintiff implies that he is either a co-plaintiff with the 65 other inmates who are identified on pp. 5-7 of his complaint, or, that he seeks recognition as the representative of a "... class-action suit that is brought against the Ouachita Parish Sheriff and Warden ..."

### a. Joinder of Plaintiffs

Plaintiff submitted an application to proceed *in forma pauperis* (*ifp*) [rec. doc. 2] and, on December 17, 2008, his motion was granted. [rec. doc. 3] However, none of the putative co-plaintiff's submitted either *ifp* applications or the appropriate filing fees necessary to institute litigation in this court. In the absence of either an ifp application or the payment of filing fees, these "co-plaintiffs" may not join in this litigation.

Further, Local Rule 3.2W provides, "Each *pro se* prisoner shall file a separate complaint or petition except where multiple prisoners are asserting the same claims arising out of the same facts." While it appears that these co-plaintiffs might be asserting the same claims, it is also clear that the claims do not arise out of the same facts, since, as plaintiff noted, only "... some of the plaintiffs don't have the means of money to pay for using the phone..." It is also unclear from the pleadings whether all of the 65 co-plaintiffs are or remain pre-trial detainees; whether each has been appointed counsel from the local public defender's office; and whether each has sustained some injury as a result of the allegedly deficient diet. In short, to the extent that plaintiff moves the court to permit joinder as co-plaintiffs of the 65 inmates named in his complaint [rec. doc. 1, pp. 5-7] such permission must be denied in accordance with LR 3.2W.

### b. Class Action Certification

To the extent that plaintiff seeks certification of this action as a class-action, his request fares no better. In order for a lawsuit to be certified as a class action under Rule of Federal Procedure 23(b)(3), the mover must prove that the four prerequisites found in Rule 23(a) and the two additional requirements in Rule 23(b)(3) are met. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir.1999). Under Fed.R.Civ.P. 23(a), an action may be maintained as a

class action if it meets the criteria of numerosity, commonality, typicality and adequacy of representation. *Mc.Grew v. Texas Bd. Of Pardons and Paroles*, 47 F.3d 158, 161 (5th Cir.1995). The requirements for Rule 23(b) "are 'predominance' and 'superiority': 'Common questions must predominate over any questions affecting only individual members', and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " *Mullen*, 186 F.3d at 624, citing *Anchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997), quoting Fed.R.Civ.P. 23(b)(3). The district court has wide discretion in deciding whether or not to certify a proposed class. *McGrew*, 47 F.3d at 161. Also, *Mullen*, 186 F.3d at 624.

Here, it is clear that plaintiff should not be permitted to litigate his claims as a class action. When he filed suit, plaintiff was a prisoner acting *pro se*; he is, in fact, no longer a pre-trial detainee at OPCC. While he is apparently no longer incarcerated, he has not demonstrated that he would be an adequate representative of his fellow inmates in a class action. *Caputo v. Fauver*, 800 F.Supp. 168, 169-170 (D.N.J.1992); *Fymbo v. State Farm Fire & Casualty Co.*, 213 F.3d 1320, 1321 (10th Cir.2000); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975); *Ethnic Awareness Org. v. Gagnon*, 568 F.Supp. 1186, 1187 (E.D.Wis.1983); <u>Wright, Miller & Kane, Federal Practice and Procedure 2d: Civil</u> § 1769.9, n. 12. See, *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 162 (5th Cir.1995).

To the extent that he asserts such a motion, plaintiff's motion for class-action certification must be denied.

### 2. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or

employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a

plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff has set forth specific facts which he claims entitles him to relief. His claims are manifestly without merit and frivolous and no amendment of these pleadings would cure such a deficiency.

### 3. Mootness

Plaintiff seeks only injunctive relief with regard to his claims against OPCC. However, the record demonstrates that he is no longer being detained at that facility, having been transferred to the Richwood Correctional Center in February and then released from custody in March.

The transfer of a prisoner out of an allegedly offending institution generally render his claims for injunctive relief moot. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam*) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1081 (5th Cir.1991) (*per curiam*) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief).

In order for plaintiff's claims to remain viable, he would have to establish that the

possibility of a return to OPCC as a pretrial detainee would make his claims capable of repetition yet evading review. See *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975). In other words, to survive dismissal on the basis of mootness, plaintiff must show either a "demonstrated probability" or a "reasonable expectation" that he will again be incarcerated as a detainee at the offending institution. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). At its most lenient, the standard is not "mathematically precise" and requires that plaintiff show a "reasonable likelihood" of repetition. *Honig v. Doe*, 484 U.S. 305, 318-19, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Clearly, plaintiff's requests for injunctive relief are moot.

### 4. Merits

Finally, even if the 65 inmates were allowed to join in this suit, or, even if plaintiff were permitted to litigate his claims as a class action, and, even if these claims were not subject to dismissal as moot, each, as is shown below, is legally frivolous and subject to dismissal on that basis.

#### a. Diet

Plaintiff claims that the OPCC does not employ a dietician, serves an insufficient amount of food, and serves the detainees their meals 45 minutes after it has been prepared. The Constitution mandates that detainees and inmates be provided " 'well-balanced meal[s], containing sufficient nutritional value to preserve health.' " *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted); see also *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996) ( per curiam) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized

measure of life's necessities.' " *Talib v. Gilley*, 138 F.3d 211, 214, n. 3 (5th Cir.1998)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.* However, even on a regular, permanent basis, two meals a day may be adequate. *Green*, 801 F.2d at 770-71. In *Talib*, the Fifth Circuit expressed serious doubts that the prisoner-plaintiff, who "missed about fifty meals in five months and lost about fifteen pounds," met that threshold. *Talib*, 138 F.3d at 214 n. 3.

The instant complaint does not even rise to the level mentioned in *Talib*. Here, plaintiff does not allege that he was denied anything close to the "minimal measure of life's necessities..." during his brief period of incarceration at OPCC. Nor did he allege any specific physical harm resulting from OPCC's alleged failure to employ a dietician, increase serving sizes, or serve him and his fellow inmates in a timely manner. He did not claim that he or his companions were at all undernourished, or that they lost weight or suffered any other adverse physical effects as a result of the complained of conditions; nor did he intimate that he or others would suffer absent this court's intervention into the dietary operations of the OPCC. Plaintiff offered only a conclusory allegation that the OPCC diet was calorically inadequate; that allegation is insufficient to state a claim for which relief might be granted; thus, his dietary claim is subject to dismissal as frivolous.

### b. Telephone

Detainees have a limited right under some circumstances to telephone access. *Gordon v. Watson*, 622 F.2d 120 (5th Cir.1980) (holding that barring telephone access to a detainee and placing him in confinement precluded summary judgment since Plaintiff proved it as retaliatory

9

motive for reporting the lack of access to a judge); *Montana v. Comm's Ct.*, 659 F.2d 19, 23 (5th Cir.1981) (recognizing unreasonable restrictions on telephone use) (abrogated on other grounds, *Henslee v. Lopez*, 20 F.3d 470 (5th Cir.1994) (unpublished). Thus, while the Courts have recognized that detainees have a First Amendment right to communicate with friends and family, plaintiff has nowhere alleged that such a right was totally denied to either him or any other pretrial detainee at OPCC. Even indigent detainees may place collect calls at no expense to themselves. Plaintiff's claim is clearly frivolous.

### c. Inadequate Law Library

Plaintiff's complaint concerning the alleged inadequacies of the OPCC law library implicate the constitutionally guaranteed right of access to the courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). See *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file nonfrivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Moreover, to prevail on an access-to-the-court claim, a prisoner must generally demonstrate that he has suffered "an actual injury" stemming from the alleged defendants' unconstitutional conduct. *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir.1999); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998).

Plaintiff was a pre-trial detainee awaiting trial in the Fourth Judicial District Court during the time he was incarcerated at OPCC. Plaintiff claimed that he needed more meaningful access

to the jail law library as well as access to current law books in order to adequately defend himself against pending criminal charges. Plaintiff conceded that court-appointed counsel was offered to him, but that he chose to reject the assistance of appointed counsel in order to represent himself on the pending criminal charges.  Plaintiff raised a similar claim under similar circumstances in a previous prisoner suit. In *William Earl Degrate v. Laymon Godwin*, 84 F.3d 768, 769 (5th Cir.1996) the Fifth Circuit held that the plaintiff, who had rejected the assistance of his court-appointed attorney "had no constitutional right to access a law library in preparing the *pro-se* defense of his criminal trial."  Likewise, in *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir.1981) the Fifth Circuit held that in the absence of extraordinary circumstances, a criminal defendant represented by counsel does not have a constitutional right to file every *pro-se* motion he wants to file in addition to his attorney's motions.

These holdings are in accord with cases from other federal circuits. See  *United States v. Smith*, 907 F.2d 42, 45 (6th Cir.) (the state does not have to provide access to a law library to defendants who wish to represent themselves), *cert. denied*, 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 533 (1990); *United States ex rel George v. Lane*, 718 F.2d 226, 233 (7th Cir.1983) (the state was not required to offer a defendant law library access once it offered the defendant assistance of counsel); *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir.1982) (a prisoner's Sixth Amendment right to self-representation does not include a right to conduct research at the government's expense), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983); *Kelsey v. State of Minn.*, 622 F.2d 956, 958 (8th Cir.1980) (holding that prisoner's constitutional right of access to courts did not obligate officials to provide him with an adequate law library where alternative means of satisfying access to courts were available); *United States v. Chatman*,

584 F.2d 1358, 1360 (4th Cir.1978) (obligation to provide access to the courts was satisfied by offering the defendant the assistance of counsel); *Love v. Summit County*, 776 F.2d 908, 912-13 (10th Cir.1985), *cert. denied* 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 25 (1986), (determining pretrial detainee is not entitled to access to a law library if other available means to access the court exist) (quoting *Bounds v. Smith*, 430 U.S. 817, 830, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)).

In other words, offering or providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library. See *Lewis v. Casey*, 518 U.S. 343, 350-51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (relying on *Bounds v. Smith*, 430 U.S. at 830, 97 S.Ct. 1491); *Love*, 776 F.2d at 914. Thus, while prisoners like the plaintiff have a right to adequate, effective and meaningful access to the courts, access to a law library is only one of many constitutionally acceptable methods used to assure meaningful access to the courts. See *U.S. v. Taylor*, 183 F.3d 1199 (10th Cir.1999), *cert. denied* by *Taylor v. U.S.*, 528 U.S. 904, 120 S.Ct. 244, 145 L.Ed.2d 205 (1999).

Plaintiff's access to courts claim is thus frivolous.

### 5. Conclusion

Therefore, for the foregoing reasons,

**IT IS RECOMMENDED** that plaintiff's request to join the 65 individuals listed in his complaint as co-plaintiffs [rec. doc. 1, pp. 5-7] be **DENIED;**

**IT IS FURTHER RECOMMENDED** that plaintiff's motion to obtain class-action certification be **DENIED;** and,

**IT IS FURTHER RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as moot and as frivolous pursuant to the provisions of 28

U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, March 25, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE